PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellants,

v.

J.M. HUBER CORPORATION, Appellee.

No. 13558.

Court of Appeals of Texas, Austin.

April 20, 1983.

Rehearing Denied May 11, 1983.

Mark White, Atty. Gen., Leon J. Barish, Asst. Atty. Gen., Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for appellants.

Lawrence S. Smith, Small, Craig & Werkenthin, Austin, for appellee.

Before PHILLIPS, C.J., and SHANNON and POWERS, JJ.

POWERS, Justice.

Pedernales Electric Cooperative, Inc. (Pedernales) and the Public Utility Commission of Texas appeal from a judgment of the trial court which reverses a final order of the Commission and remands to it an electric rate proceeding conducted by the agency under Tex.Rev.Civ.Stat.Ann. art. 1446c (1980), the Public Utility Regulatory Act (PURA). We will affirm the trial court's judgment.

J.M. Huber Corporation owns and operates through a subsidiary a rock-crushing plant situated within the municipal limits of the City of Marble Falls, Texas. The plant

consumes electricity supplied by Pedernales, a public utility which serves Marble Falls and numerous other municipalities and unincorporated areas. The City Council of Marble Falls retains exclusive original jurisdiction over electric rates charged by Pedernales within the city's municipal limits. PURA §§ 17, 26. The Huber plant falls within a category of Pedernales customers consuming large quantities of electricity, for which they are charged according to the utility's tariff schedule "LP," a rate schedule "[a]pplicable to all commercial and industrial consumers whose demands for all users [sic] are 50 KW or more, and whose uses are not covered by a specific rate schedule."

The City Council, on October 10, 1978, amended the Pedernales tariff by an ordinance which reduced the rate which may be charged "LP" customers within the city, reciting that after hearing the council found "unreasonably high" the rate theretofore charged such customers.

Pedernales appealed to the Commission, invoking that agency's power to "fix such rates as the municipality should have fixed in the ordinance ...," PURA § 26(e), and naming Marble Falls as "respondent" in the appeal. Huber intervened in the agency proceeding. After hearing, the Commission's hearings examiner filed a report with the Commission reciting the "Procedural History" of the case as well as eleven "Findings of Fact" and five "Conclusions of Law" which he recommended to the Commission. The Commission on October 29, 1979 issued the following order:

### ORDER

In public meeting at its offices in Austin, Texas, the Public Utility Commission of Texas finds that the above-styled application was processed in accordance with applicable statutes by an Examiner who prepared and filed a report containing Findings of Fact and Conclusions of Law, which Examiner's Report is hereby modified and the following Conclusions of Law are substituted for the corresponding Conclusions originally proposed:

1. It is not in the public interest to reduce the rates of some members of a single class of customers without making corresponding adjustments for all other members of the same class or other classes of customers affected by the adjustment.

\*   \*   \*   \*   \*   \*

4. It is not necessary under the facts of this case to correct the disparity between the rate of return of the LP Class and the system as a whole.

5. It is just and reasonable that the General Counsel of the Commission be directed to initiate an investigation to determine the necessity of a formal inquiry into the rate structure of Pedernales Electric Cooperative, Inc.

The Commission further issues the following Order:

The relief sought by Pedernales Electric Cooperative, Inc. is hereby granted and Pedernales is directed to maintain its preexisting rates for the Large Power Class within Marble Falls.

The General Counsel of the Commission is hereby directed to initiate an investigation to determine if the need exists for a formal inquiry into the rates of Pedernales.

One observes that the foregoing order does not itself make or declare findings of fact and conclusions of law as required by Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 16(b) (Supp.1982), the Administrative Procedure and Texas Register Act (APTRA), nor does it expressly incorporate or adopt by reference any findings of fact or conclusions of law "recommended" by the hearing examiner, a practice approved in *Imperial American Resources Fund, Inc. v. Railroad Commission of Texas,* 557 S.W.2d 280, 285 (Tex. 1977). Nevertheless, no complaint is made on appeal or in the court below about this aspect of the Commission's order, and because it plainly determines a matter within the agency's jurisdiction and purports to terminate the rate proceeding, we will treat it as a final order of which we have jurisdiction under APTRA §§ 19 and 20 and which

impliedly adopts the hearing examiner's findings of fact and conclusions of law as the latter are modified within the terms of the order itself.

Huber filed in the Commission a motion for rehearing wherein it contended that the agency erred as a matter of law in adopting the first conclusion of law set forth in the order quoted above, owing to the reasons set out in the motion. The Commission "denied" the motion for rehearing.

Huber thereafter sued in a district court of Travis County for judicial review of the Commission's final order under APTRA § 19(e), contending the order to be erroneous "as a matter of law because it violates the Public Utility Regulatory Act, Sections 17, 26, 38, 40 and 45," averring particularly that the order perpetuates a prohibited discriminatory rate system and has the practical effect of depriving Marble Falls of the exclusive original jurisdiction over electric rates granted the city by the terms of PURA § 17(a). The Commission appeared and answered in the suit after service of citation. Pedernales intervened. After hearing, the trial court reversed the Commission's order and remanded the proceeding to the Commission, from which judgment Pedernales and the Commission have prosecuted this appeal on several points of error.

In Pedernales' first point of error, it challenges Huber's standing to maintain a suit for judicial review under APTRA § 19(e) and PURA § 69. Pedernales argues the general proposition that any judgment rendered by a district court in a proceeding invoked by a plaintiff who lacks the requisite interest in the controversy, as that interest is specified in the common law, a constitutional provision, or a statute which confers upon the district court a special jurisdiction, as APTRA § 19(e) and PURA § 69 do, amounts to nothing more than an advisory opinion; and an advisory opinion is beyond the constitutional power of a district court to render in the exercise of the general and special jurisdiction given the district courts by art. V, § 8 of the Constitution of Texas. It follows, of course, that

the Legislature is powerless to authorize a Travis County district court to render an advisory opinion pursuant to its exercise of any special statutory jurisdiction which the Legislature may confer upon that court or other district courts. *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 781–83 (Tex.1960) (in granting the district courts special jurisdiction to adjudicate controversies under the Declaratory Judgments Act, Tex.Rev.Civ. Stat.Ann. art. 2524–1 (1965), for example, the Legislature did not intend to authorize the giving of advisory opinions in the exercise of that jurisdiction in violation of the constitutional jurisdictional requirement of a "justiciable controversy"); *Ex parte Towles*, 48 Tex. 413, 442–43 (Tex.1877) (the Legislature, in a statute providing for a right of "appeal" to the district court from certain decisions of a commissioner's court, may not by that grant of special jurisdiction constitutionally confer upon the district courts the power to determine political questions).

In our consideration of Pedernales' first point of error, we are not unmindful of several rules applicable to the question of a plaintiff's "standing" to maintain a suit in district court:

1. The question of a plaintiff's standing to apply for judicial relief from the decision of an administrative agency has been regarded almost universally as being a question which "does not touch the merits of the suit, but merely the authority of the [court] to entertain it." *Mitchell v. United States*, 313 U.S. 80, 92, 61 S.Ct. 873, 875, 85 L.Ed. 1201 (1941); 2 Am.Jur.2d Administrative Law § 575, at 393–96 (1962).

█ 2. The statutory rights to judicial review of the Commission's final orders, given in PURA § 69 and APTRA § 19(e), are statutory grants of special jurisdiction to Travis County district courts; and such special jurisdiction is in addition to the original general jurisdiction and special jurisdiction given all district courts in art. V, § 8 of the Constitution of Texas. Without the grant of this special jurisdiction to the district courts of Travis County, they would be

powerless to review the decisions of administrative agencies absent a violation of a constitutional right or an adverse effect upon a vested property right. *Stone v. Texas Liquor Control Board,* 417 S.W.2d 385 (Tex.1967); *Policemen's & Firemen's Civil Service Commission v. Blanchard,* 582 S.W.2d 778 (Tex.1979).

3. "The rule is well settled ... 'that there is no presumption of jurisdiction when a court, although it is one of general jurisdiction, exercises special statutory powers in a special statutory manner or otherwise than according to the course of the common law ....'" *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1089 (Tex. 1926).

■ 4. The question of jurisdiction is fundamental and can be raised at any time in the trial of a case or on appeal. *Roberts v. Roberts,* 165 S.W.2d 122 (Tex.Civ.App. 1942, writ ref'd w.o.m.).

It is uncertain which of these venerable rules no longer form a part of our jurisprudence, in the matter of "standing," for the Supreme Court of Texas has specifically *held* that even in a case where the district court exercises the special statutory jurisdiction conferred upon it by APTRA § 19(e) (and Section 20 of the Texas Motor Carrier Act, Tex.Rev.Civ.Stat.Ann. art. 911b (1964)) to review the final order of an administrative agency, "the issue of standing [is] not properly before the court of appeals," as a question of jurisdiction, unless the party raising the issue of standing has pointed out such "lack of justiciable interest ... to the trial court (or the district court sitting as an appellate court) in a written plea in abatement, and a ruling thereon must be obtained or the matter is waived." *Texas Industrial Traffic League v. Railroad Commission of Texas,* 633 S.W.2d 821, 822–23 (Tex. 1982); *cf., Hooks v. Texas Department of Water Resources,* 611 S.W.2d 417, 419 (Tex. 1981) (holding on the merits of the standing question that the plaintiffs had the requisite interest specified in APTRA § 19(e) and Tex. Water Code § 5.351(a) (Supp.1982) to obtain judicial review of an administrative agency's final order, even though the court of appeals had dismissed the appeal *sua sponte* and the "issue of standing" or "lack of justiciable interest" had not been presented to or ruled upon by the trial court).

■ The Supreme Court has not suggested what issues of fact or law are encompassed by the word "standing" or the term "justiciable interest," and therefore what precisely are the issues which must be determined by the trial court pursuant to a plea in abatement. Heretofore, pleas in abatement have ordinarily been reserved for dilatory pleas, as opposed to pleas in bar such as a plea that the trial court is without jurisdiction. *See* 2 McDonald, Texas Civil Procedure, §§ 7.03, 7.04 (1982). Moreover, in *Texas Industrial Traffic League v. Railroad Commission,* supra, the Supreme Court expressly states that issues of "standing" and "justiciable interest" are *not* "questions of fundamental error." 633 S.W.2d at 822–23. We may assume then that they are not issues going to a court's jurisdiction. This is, of course, a dramatic new departure from the Supreme Court's previous decisions in *Holland v. Taylor,* 153 Tex. 433, 270 S.W.2d 219, 220–21 (Tex.1954) and *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837, 841 (Tex.1926). As noted in Spears and Sanford, *Standing to Appeal Administrative Decisions in Texas,* 33 Baylor L.Rev. 215, 234 (1981), these decisions had been viewed as holding that a "[l]ack of standing is fundamental error" and that "[a]n appellant's failure to show a justiciable interest is jurisdictional and may be raised by the court on its own motion during trial or on appeal of the case."

■ Moreover, in *Texas Industrial Traffic League,* the Court of Appeals had specifically pointed out that the "advisory opinion" and "political question" limitations upon the judicial power formed the very basis of the law of standing as did the "case or controversy" limitation imposed upon federal courts by Article III of the Constitution of the United States, 628 S.W.2d 187, 192–200 (Tex.App.1982). The Court of Appeals then concluded that "it is quite apparent that the adverse effect relied upon [by the party seeking judicial review of an ad-

ministrative agency's final order] must be sufficiently grave, and involve a sufficiently important interest, to satisfy these constitutionally-based strictures upon the power of the judicial department" and "that the 'person aggrieved' provision of [APTRA] § 19 and any other statute purporting to give the right of judicial review must be interpreted in light of the constitutionally-based prohibition against the rendering of advisory opinions." *Id.,* at 201–02. Noting that jurisdiction could not be presumed under *Mingus v. Wadley, supra,* the case was remanded to the trial court in the interest of justice that the question of jurisdiction might be there determined. 628 S.W.2d at 206. The advisory opinion and political question issues are essentially the same contentions advanced by Pedernales in the present case under its point of error that Huber lacks "standing" to prosecute a suit for judicial review of the Commission's final order under APTRA § 19(e) and PURA § 69. Therefore, under the holding of the Supreme Court in *Texas Industrial Traffic League* we may not consider Pedernales' point of error because the record before us does not show that the trial court ever ruled upon such contentions pursuant to a "plea in abatement" or other plea. We therefore have no choice but to hold that Pedernales waived its complaint as to Huber's lack of "standing" to maintain a suit for judicial review of the Commission's final order.

We turn then to the remaining points of error raised by Pedernales and the Commission on appeal, all of which we must determine within the confines of the Commission's conclusion of law number one, quoted above, for the remainder of the hearings examiner's conclusions of law, even as modified by the terms of the Commission's order, and assuming them to have been incorporated in the order, merely amount to abstract declarations of law which neither the order nor the proposal for decision connects to the facts of the case, or else they are not subjects of dispute between the parties on appeal. For our purposes, then, the order of the Commission directing Pedernales to maintain in force its previous "LP" rates rests upon the Commission's conclusion of law that "[i]t is not in the public interest to reduce the rates of some members of a single class of customers without making corresponding adjustments for all other members of the same class or other classes of customers affected by the adjustment." The parties assign separate meanings to this conclusion of law.

Huber interprets this conclusion of law to mean that Marble Falls may not change the electric rates paid by customers within municipal limits unless the rates paid by Pedernales customers outside municipal limits are changed concurrently; and because the city is legally powerless to compel a change in the latter class of rates, the effect of the Commission's conclusion of law is to deprive the city altogether of the exclusive original jurisdiction granted by PURA § 17(a) to the governing body of Marble Falls to fix intra-city electric rates charged by Pedernales. Huber also contends that the lack of uniformity between intra-city rates and those in effect in the Pedernales system outside the city is the inevitable result of placing in municipal governments the exclusive original jurisdiction to determine intra-city electric rates, and therefore a result contemplated by PURA in its division of original jurisdiction in such matters. Huber argues that the Commission's appellate jurisdiction under PURA is simply to "fix such rates as the municipality should have fixed in the ordinance from which appeal was taken," PURA § 26(e), and the agency's order in the present case exceeded that jurisdiction, and impinged upon Marble Falls' exclusive original jurisdiction, because the conclusion of law is an impermissible basis for voiding Marble Falls' amending ordinance which set a new rate for Pedernales "LP" customers within municipal limits.

Pedernales interprets the Commission's conclusion of law to encompass only intra-city rates, which is to say, Marble Falls' amending ordinance was held invalid by the Commission because Marble Falls may not reduce the rates of customers in one rate class within the city without adjusting concurrently the rates charged other customers

in the same class within the city, and the rates of other intra-city customers in other affected classes.

We need not decide if either of these interpretations of the Commission's conclusion of law is correct, for irrespective of what the Commission intended by its conclusion of law, we must sustain Huber's position that the Commission exceeded its statutory authority in reinstating Pedernales' previous rates for "LP" customers based upon its conclusion of law. APTRA § 19(e)(2).

■ PURA § 26(e) provides that on appeal from rate ordinances enacted by a municipality which has not surrendered its exclusive original jurisdiction, the Commission "shall hear such appeal de novo and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken." In the exercise of its exclusive original jurisdiction, a municipality may base its rate determinations on data applicable solely to utility operations within municipal limits or it may base such determinations on system-wide data; however, it may only require the utility to furnish system-wide data sufficient to allow the municipality to calculate the rate base, expenses, investment, and rate of return allocable to the municipality. PURA §§ 22, 23; *City of Corpus Christi v. Public Utility Commission,* 572 S.W.2d 290, 294–96 (Tex.1978). Obviously, then, the inevitable result of the exercise of their statutory jurisdiction by municipalities is a variation in the rates applicable to a utility's customers within and without municipal limits, when the utility serves both categories of customers. Section 44 of PURA indeed anticipates such variations, for it provides that public utility rates outside municipal limits "shall not exceed without commission . . . approval 115 percent of the average of all rates for similar services of all municipalities served by the same utility within the same county."

■ The scope of the Commission's appellate authority to review the rate ordinance of a municipality and to fix the rates which the governing body of the municipality should have fixed in its ordinance becomes clear when the provisions of PURA granting such jurisdiction are read in the context of the entire Act. The Commission may fix the rate the governing body should have fixed based upon the *Commission's* determination of what is a reasonable allocation of system-wide data to the rate base, expenses, investment, and rate of return attributable to the utility's service within municipal limits. There may also be cases where the Commission could fix an intra-city rate derived from system-wide data furnished by the utility, on the theory that the governing body of the municipality should have made no allocation at all of the system-wide data. Moreover, the Commission may also fix an intra-city rate within the 115 percent differential allowed by PURA § 44, on a theory that the circumstances did not warrant the Commission's approval of a greater differential. Finally, the Commission may fix an intra-city rate based upon a proper application of some other substantive or procedural requirement of PURA where the rate set by the municipality's governing body resulted from its erroneous interpretation or application of such a provision.

■ The Commission has done none of these things in the present case, however. The Commission has simply set aside the rate reduction fixed in the Marble Falls ordinance and reinstated the higher rate previously in effect, apparently upon the general principle that such reductions are not in the public interest. The Commission's decision is not tied to the city's application of a standard or procedure prohibited by PURA, or the city's failure to apply a standard or follow a procedure which it should have followed under PURA. Instead, the Commission's decision is expressly based on its naked and unqualified legal conclusion that it is not in the public interest to reduce the rates charged some members of a class of ratepayers without adjusting the rates of other ratepayers in the same class or in another class affected by the reduction. This generalization is so broad and unconnected to the underlying

findings of fact as to preclude meaningful judicial review, as is amply illustrated by the parties' differing interpretations of what the conclusion means. The Commission's final order does not, for example, state that the rate reduction promulgated by the Marble Falls ordinance is against the public interest in any particular way or for any particular reason. Instead, the order condemns in the abstract all selective rate reductions as a general principle.

Moreover, neither the Commission nor Pedernales suggests any authority for the unqualified proposition that a municipality may not fix rates for one rate class without adjusting rates for other classes. The statutory arguments which they make for this proposition are exceedingly weak. Pedernales argues that under PURA §§ 23 and 39 utility rates must be fixed on the basis of determinations of the utility's rate base, expenses, investment, and rate of return within the municipal boundaries and overall revenue requirements. Of course, this position does not prevent the possibility that the city's rate ordinance reducing the rates paid by one class of customer *may* have been based on such determinations, and the Commission does not in the present case base its decision on a finding that the ordinance was *not* so founded. Pedernales also argues that the statement in PURA § 2, that "[t]he purpose of this act is to establish a *comprehensive* regulatory system" (emphasis added), and the provisions in PURA which state that the city shall fix "rates" rather than a single "rate," also support the theory that a city may not reduce rates for one class alone. These arguments are so weak as not to require comment. Finally, both Pedernales and the Commission argue that the effect of allowing cities to reduce rates for one class of customer, without adjusting the rates paid by other classes within or without the city, is to produce discriminatory rates in violation of § 38 and § 45. Of course, some degree of disparity in the rates paid within and without a municipality having exclusive original jurisdiction over utility rates is inherent in the granting of exclusive original jurisdiction to municipalities encompassed within the area

served by a single utility, but this does not, without more, constitute the discrimination in rates prohibited by those two sections. Indeed, the effect of a city's reducing the rates paid by a single class of customers within the city may be to *correct* discriminatory and excessive rates. Huber argues strenuously that the Marble Falls ordinance had this very purpose, and the hearings examiner recommended a reduction for the "LP" class alone throughout the Pedernales system on that very basis.

If the Commission had concluded that it was not in the public interest for the city to fix rates for one class, in this particular case, and made findings of fact which support that conclusion, we would be faced with a different case. The Commission has not done so in this case, however, but has simply declared Marble Falls' rate ordinance invalid because selective rate reductions are in their very nature against the public interest. Therefore, one may not say that the Commission has fixed the rate Marble Falls should have fixed.

Pedernales also contends that the Commission's order was erroneously reversed by the trial court because the facts shown in the administrative record "provide an abundance of substantial evidence supporting the order" and PURA § 69 "requires review under the substantial evidence rule." Section 69 of PURA specifies only the scope of judicial review with respect to *factual* inferences drawn by the Commission from evidence adduced in the agency—it does not purport to exhaust the grounds upon which the validity of any resulting final order must be judged on appeal to a district court, as those grounds are set out in APTRA § 19(e).

In addition to appellants' contention that the Commission's conclusions of law (as interpreted and explained by appellants) are correct, they also contend that the Commission's order is sustainable on grounds *not* contained in the agency's conclusions of law; and, therefore, the trial court erred in reversing the agency's final order. For example, Pedernales defends the Commission's final order on the ground that the

Marble Falls ordinance was a "sham" and was not enacted in compliance with the procedures and standards promulgated in PURA to govern such matters. The Commission, on its part, defends the order on the ground that the disparity between the rate of return between the "LP" Class and the other classes was not *unreasonably* discriminatory, as it must be before a final order in a rate proceeding may be set aside on judicial review. One observes, of course, that the hearings examiner's findings of fact and conclusions of law do not purport to address the validity of the rate ordinance; and his conclusion of law that Pedernales' rates *were* unreasonably discriminatory was expressly set aside by the Com-mission in favor of its conclusion of law that rate adjustments are not in the public interest unless the rates of those in the same class, and those in other affected classes, are also adjusted.

The judgment of the trial court is affirmed.

SHANNON, J., not participating.