Gilbert REYNA, Jr., Alfredo Ortiz, Jr., and Eliberto Hernandez, Appellants,

v.

The CITY OF WESLACO, Texas, et al., Appellees.

No. 13–95–328–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 27, 1997.

Rodolfo D. Sanchez, Weslaco, for appellants.

Catherine L. Kyle, James Ludlum, Jr., Anthony G. Brocato, Ludlum & Ludlum, Austin, Darrell G. Noga, Robert M. Manley, Cooper, Aldous & Scully, Dallas, for appellees.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an appeal of a summary judgment order dismissing appellants' civil rights claims against the City of Weslaco. By eight points of error, appellants challenge the trial court's finding as to the constitutionality of the City's policy regarding access to misdemeanor complaints and the judicial, prosecutorial, and qualified immunities granted to the municipal court judge and city attorney. We reverse and remand.

On separate occasions, the City of Weslaco municipal court denied Alfredo Ortiz, Jr, Gilbert Reyna, Jr., and Eliberto Hernandez, appellants, immediate access to the complaints charging them with class C misde-

meanors, which were to be adjudicated at the municipal court. Ortiz was arrested on January 11, 1991. Despite efforts since mid-February 1991, his attorney was not provided a copy of the complaint by the municipal court until April 23, 1991, three days before Ortiz's trial. At trial, Ortiz was found guilty and assessed the maximum fine plus court costs. On May 8, 1991, Hernandez sought a copy of the complaint against him from the municipal court, pursuant to a summons he received the month before. The municipal court clerk explained that she could not give him a copy of the complaint. On May 31, 1991, the charge against Hernandez was dropped. On September 14, 1991, Reyna was arrested by city police without explanation or presentation of a warrant for his arrest. On September 16, 1991, Reyna appeared before the municipal judge and requested an explanation for his arrest and a copy of the complaint against him. The judge could not locate the complaint against Reyna. The judge, however, offered Reyna credit for his time served and a fine. Reyna paid the fine and left.

Ortiz, Reyna, and Hernandez sued the City of Weslaco and its municipal judge and city attorney in their official capacities under the Federal Civil Rights Act, 42 U.S.C.A. § 1983 (1994), the Texas Tort Claims Act, TEX. CIV. PRAC. & REM.CODE Ann. §§ 101.001–101.109 (Vernon 1986 & Supp.1996), and the Texas Constitution, art. 1 §§ 10 & 19; art. 2, § 1; art. 4, § 10, seeking monetary, declaratory, and injunctive relief. By their pleadings, appellants alleged that the City of Weslaco, through its municipal judge and city attorney, adhere to a policy or custom that denied appellant's immediate access to the complaints against them. Appellants also alleged that by policy or custom of the City of Weslaco, the municipal judge exercised prosecutorial functions that improperly were ceded to him by the city attorney,[1] which resulted in violations of appellants' due process rights. The City moved for summary judgment, based on judicial, prosecutorial, quali-

1. Based on the facts on record, the Weslaco municipal judge, as a matter of course, reviews complaints drafted by the city police for the proper fit between the facts of the case and the corresponding charge, while also presiding over class C misdemeanor cases in his court. The city attorney tends not to be involved in the prosecution of municipal cases unless a defendant contests the charge.

fied, and sovereign immunity. The City also argued that there was no evidence of an official custom or policy that denied appellants their constitutional rights, which is needed for an action under 42 U.S.C. § 1983. The trial court granted summary judgment but did not specify the grounds for the order.

On appeal, appellants challenge only the dismissal of their claims for injunctive and declaratory relief under Section 1983, including attorney's fees, and the Texas Constitution. By their request for declaratory relief, appellants seek an announcement that the delay of their access to the complaints against them caused by the municipal judge and city attorney violated their rights under both the United States and Texas Constitutions and under the Texas Code of Criminal Procedure. By the request for "injunctive and supplemental relief" in their petition, appellants seek a permanent injunction against the alleged unconstitutional practices by City of Weslaco, an order directing the City to insure that municipal court personnel are properly trained and that the city attorney and his staff carry out their functions in a constitutional manner, and damages to remedy past and ongoing violations against appellants.

Because appellants' seventh point of error addresses the substance of their claims against appellees, we address it before the other points, which challenge only the immunities defenses. By point of error seven, appellants claim the trial court erred in finding no material issue of fact concerning the existence of an official custom or policy that denied appellants their constitutional rights. In their reply brief, appellees assert that appellants lack standing to assert any violations of their constitutional rights.

■■■■ Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. TEX.R. CIV. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex.1985). The burden of proof is on the movant, and all doubts regarding material fact are resolved against the movant. Nixon, 690 S.W.2d at 548–49; Roskey v. Texas Health Facilities Comm'n, 639 S.W.2d 302, 303 (Tex.1982).

For review on appeal, evidence favorable to the nonmovant must be taken as true, and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. Nixon, 690 S.W.2d at 548–59. To sustain a summary judgment dismissing a claim, the record must either negate an essential element of the plaintiff's cause of action or establish an affirmative defense. Bangert v. Baylor College of Medicine, 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Where a court did not specify the basis for summary judgment, the appealing party must show that each of the independent grounds in the summary judgment motion is insufficient to support the order. Tilotta v. Goodall, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Summary judgment evidence may include affidavits from competent affiants, based on personal knowledge and setting forth facts that would be admissible in evidence. Tex.R. Civ. P. 166a(f). Legal conclusions in affidavits have no probative force. Life Ins. Co. v. Gar–Dal, Inc., 570 S.W.2d 378, 381–82 (Tex.1978). Pleadings do not constitute summary judgment evidence, but may be considered in determining whether a legally enforceable claim has been pleaded. Perser v. City of Arlington, 738 S.W.2d 783, 784 (Tex.App.—Fort Worth 1987, writ denied).

■■■■ A municipality may be liable under Section 1983 if its policy or custom caused a constitutional injury. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to notice of the nature and cause of an accusation against them. U.S. Const. amend VI. This guarantee is made applicable to the states by incorporation into the Due Process Clause of the Fourteenth Amendment. In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). The purpose of a complaint used as a misdemeanor charging instrument is to apprise the accused of facts surrounding the offense with which he is charged so that he may prepare a defense. Kindley v. State, 879 S.W.2d 261,

262 (Tex.App.—Houston [14th Dist.] 1994, no writ.) In misdemeanor cases, it is not necessary that an accused be furnished with a copy of the indictment or information before trial, but upon demand he or his counsel must be given one as early as possible. TEX. CODE CRIM. PROC. ANN. art. 25.04 (Vernon 1989).

In viewing the summary judgment evidence, we first recognize that neither the City of Weslaco, the municipal judge, nor the city attorney disputed that appellants were denied immediate access to the instruments charging them with class C misdemeanors, the complaints. The municipal judge maintained that it is the policy of the City to provide copies of complaints to defendants and that the City has no official policy or custom of denying citizens charged with misdemeanor offenses their constitutional rights. The evidence indicated, however, that the municipal court, as a policy, does not include complaints with summonses to the accused, but rather notifies the accused of the charges against them orally once the accused appear in court. The city attorney admitted to instructing the municipal court that attorneys seeking complaints for defendant clients should be referred to his office so that he may "deal with them there." As matter or record, there was a three-month delay by the municipal court or prosecutor in making a copy of a complaint available to the defense attorney requesting it, and also an instance in which the municipal judge could produce no record of an accused's arrest when he appeared before the judge. In their respective affidavits, the judge and prosecutor state that at all times relevant to this action they were acting in good faith. These statements are legal conclusions and have no probative force. Because the City's standing claim was not presented to the trial court in their motion for summary judgment, it may not be considered in assessing the merits of the motion on appeal. *McKnight v. Riddle & Brown, P.C.,* 877 S.W.2d 59, 62 (Tex.App.—Tyler 1994, writ denied). We therefore hold that the trial court erred in finding no issue of material fact in relation to appellees' claim that they followed no custom or policy that denied appellants their constitutional rights. Point of error seven is sustained.

Appellant's first four points of error challenge the absolute immunities effectively granted to appellees by the trial court. By points of error one and two, appellants claim the trial court erred in granting absolute immunity to the municipal judge. Appellants argue that judges may be sued in their official capacity for injunctive and declaratory relief under 42 U.S.C. § 1983, and that even if absolute immunity were available to the municipal judge, he failed to establish his entitlement to this affirmative defense. By points of error three and four, appellants claim the trial court erred in granting absolute immunity to the city attorney. Appellants argue that absolute immunity is not available to a prosecutor sued in his official capacity only for declaratory and injunctive relief, and that even if absolute immunity were available to the prosecutor, he failed to establish his entitlement to this affirmative defense.

Actions against officials in their official capacities effectively are actions against the governmental unit of which the officials are employees or agents and not against the individuals personally, provided the government is given notice. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). In official-capacity actions, therefore, the only immunities available are forms of sovereign immunity. *Id.* at 166–67, 105 S.Ct. at 3105–06. Judges are not immune from Section 1983 actions for declaratory or injunctive relief. *Holloway v. Walker,* 765 F.2d 517, 525 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985), *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986). Judicial immunity, in fact, is not a bar to prospective injunctive relief in a Section 1983 action against a judicial officer acting in his official capacity. *Pulliam v. Allen,* 466 U.S. 522, 541, 104 S.Ct. 1970, 1980, 80 L.Ed.2d 565 (1984). Prosecutors also are not immune from Section 1983 actions for declaratory or injunctive relief. *Supreme Court of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980).

On appeal, appellants waive their claim for damages and pursue only declaratory and injunctive relief. The record reveals that appellants originally sued both the municipal judge and city attorney in their official capacities under Section 1983. The City of Weslaco also was named as a defendant in the original and sole petition. We therefore hold that the trial court erred in granting absolute immunity to the municipal judge and to the city attorney. Points of error one through four are sustained.

■ By points five and six, appellants claim the trial court erred in granting qualified immunity to the municipal judge and city prosecutor. Appellants argue that qualified immunity is an affirmative defense not available to officials sued in their official capacities. Appellants argue that even if qualified immunity were available to the municipal judge and city prosecutor, the two officials failed to show their entitlement to this defense. Qualified immunity is available only to officials sued in their personal capacities. *Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06. The record indicates that both the judge and prosecutor were sued in their official capacities. We hold that the trial court erred in granting qualified immunity to the municipal judge and city prosecutor. Points of error five and six are sustained.

■ We therefore will reverse the judgment of the trial court and remand for a new trial. We recognize, nevertheless, that the dissenting opinion would affirm the trial court's summary judgment order on the grounds that the controversy here is nonjusticiable. The dissenting opinion maintains that because charges are no longer pending against appellants and there is no realistic possibility of future injury to appellants, there is no live controversy between them and the City; hence this controversy is moot and neither declaratory nor injunctive relief may be granted. We are reluctant to reach this conclusion.

■ Under classic mootness doctrine, a justiciable controversy is definite and concrete, touching the legal relations of parties having adverse legal interests. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). A controversy between the parties therefore must exist at every stage of the legal proceedings, including the appeal. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). Cases may be mooted when the relevant law changes, *United States v. Alaska S.S. Co.*, 253 U.S. 113, 115–16, 40 S.Ct. 448, 448–49, 64 L.Ed. 808 (1920), or when allegedly wrongful behavior has passed and could not be expected to recur, *Securities & Exch. Comm'n. v. Medical Comm. for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972). One exception to the general mootness rule, however, is a controversy "capable of repetition yet evading review," by which a reasonable expectation or demonstrable probability that the "same controversy will recure involving the same complaining party" will preclude mootness. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam). The dissenting opinion correctly points out that the injustice suffered by appellants already has passed. We would add that appellants seek only declaratory and injunctive relief, not compensatory damages. There are, nevertheless, three reasons why we cannot conclude that this controversy is moot on the basis of these facts alone.

First, recognizing that violations of federal constitutional rights were alleged here and not disputed, we find that the United States Supreme Court at times has adjudicated cases that easily could have been considered moot but, because they were adjudicated, impacted the parties' legal relationship to each other. *E.g., Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712–13, 35 L.Ed.2d 147 (1973) (finding that the Texas abortion law was unconstitutional despite the case having reached the district court after Roe no longer was pregnant); *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 125, 94 S.Ct. 1694, 1699, 40 L.Ed.2d 1 (1974) (holding that an employer's request for declaratory relief that reached the trial court after the strike ended was not moot because the employees could go on strike again). If the allegations pleaded by appellants are true, adjudication of this case would vindicate the rights denied to appellants and alter the unconstitutional mu-

nicipal court policy pursued by the City of Weslaco, which would impact any person charged with a class C misdemeanor in the City. Hence it is not clear that federal precedent compels us to declare this controversy moot.

Second, the claim that a litigant lacks a personal stake in the outcome of a controversy may be understood simply as challenge to his standing to sue; but in addressing whether a litigant has a personal stake in the outcome of a controversy, the U.S. Supreme Court at times has asked simply whether the litigant "personally has suffered some actual or threatened injury traceable to the challenged action that likely will be redressed by a favorable decision. *E.g., Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *see also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). If we were to apply this test to the case at hand, the answers to this question would be "yes."

Third, we see an important factual difference between cases with analogous facts that were adjudged moot by federal courts and the case at bar. In *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), for example, Lyons complained that after being stopped for a traffic or vehicle code violation and offering no resistance or provocation, Los Angeles police officers seized him and applied a "chokehold," rendering him unconscious and damaging his larynx. Lyons sued the City of Los Angeles and four police officers for damages and injunctive and declaratory relief under 42 U.S.C. § 1983. By his claim for injunctive relief, Lyons sought to enjoin the use of control holds except when a suspect reasonably appears to threaten deadly force. By his claim for declaratory relief, he sought a judgment that absent the threat of immediate use of deadly force, use of the chokeholds is *per se* violation of various constitutional rights. The Supreme Court held that a lower federal court was without authority to issue injunctive relief in this case because Lyons lacked a sufficient personal stake in the outcome. *City of Los Angeles,* 461 U.S. at 105–06, 103 S.Ct. at 1666–67. In order to establish an actual controversy in the case, the Court reasoned, Lyons would have had to allege that he would have another encounter with the police and that either all Los Angeles police officers always choke any citizen they encounter or the City ordered or authorized police officers to act in such a manner. *Id.* In his complaint, Lyons had alleged that the City authorized the use of control holds in situations in which deadly force was not threatened. The Court, however, found the allegation non-mitigating, because Lyons failed to explain precisely how Lyons "might be realistically threatened by police officers who acted within the strictures of the City's policy." *Id.* at 106, 103 S.Ct. at 1667. The City's policy, moreover, was on record, and it indicated that chokeholds or such types of force were not authorized absent some resistance or provocation by the suspect. *Id.* at 110, 103 S.Ct. at 1669. The Court also found that the relief requested would impose too much federal authority onto state officers and their administration of criminal justice under the laws of that state. *Id.* at 112, 103 S.Ct. at 1670. *See also Curtis v. City of New Haven,* 726 F.2d 65 (2nd Cir.1984) (relying on *Lyons* to deny injunctive relief against use of mace during arrest, where use not authorized by city and there was no showing that plaintiffs likely would suffer mace assault again.)

In the case at bar, as a matter of record, the Weslaco municipal court, on three separate occasions, denied three persons prompt access to the instruments charging them with a criminal offense. For the limited purposes of a review of summary judgment order dismissing appellants' claims, this alone constitutes evidence that the denial of access to the complaints occurred pursuant to some official policy and that any person charged with a class C misdemeanor in the City of Weslaco can expect not to be given prompt access to the complaint against them. Even so, also on record is a statement by the municipal court judge that complaints are not routinely mailed to suspects with the summonses and an admission by the city attorney that he instructed the municipal court to direct persons seeking copies of their complaints to his office so that he may "deal with them there." If complete evidence regarding the municipal

court's policy regarding access to complaints were before us, we might be able to determine with some certainty that what happened to Ortiz, Hernandez, and Reyna when they requested their complaints were isolated mistakes and would not happen to them, in particular, or to anyone again. But the evidence on record does not allow us to reach this conclusion. We therefore will not speculate as to facts not before us and will not presume that this controversy is moot.

We reverse the judgment of the trial court and remand for a new trial.

SEERDEN, C.J., dissents.

SEERDEN, Chief Justice, dissenting.

I respectfully dissent.

Appellants seek recovery in the form of declaratory and injunctive relief for past-violations of their constitutional rights. In my opinion, the facts of this case do not present a justiciable controversy. Therefore, neither we nor the district court have jurisdiction to grant the requested relief.[1]

Courts are created solely for "judicial determination of presently existing disputes between parties in which effective judgment can be rendered." *Brownsville Indep. Sch. Dist. Bd. Of Trustees v. Brownsville Herald,* 831 S.W.2d 537, 538–39 (Tex.App.—Corpus Christi 1992, no writ). As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court. *State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex. 1994). For a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought. *Id.* (citing *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993)).

Appellants bring their claims for relief under 42 U.S.C. § 1983 and the Texas Constitution. It is clear that declaratory and injunctive relief are proper remedies under both

§ 1983 and the Texas Constitution. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex.1995). However, neither the Texas Constitution nor § 1983 expressly authorize any specific form of equitable relief. *See id.; see also* 42 U.S.C. § 1983. Rather, the prerequisites for the issuance of declaratory or injunctive relief are the same as in other civil litigation. *See Randall v. Wyrick,* 642 F.2d 304, 307–08 (8th Cir.1981); *Moreno v. Henckel,* 431 F.2d 1299, 1309 (5th Cir.1970). In Texas, declaratory relief is controlled by the Uniform Declaratory Judgments Act, *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001 et seq. (Vernon 1986 & Supp.1997), and injunctive relief is governed by general principles of equity. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 65.001, 65.011 (Vernon 1986).

The Uniform Declaratory Judgments Act provides that "a court of record *within its jurisdiction* has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1986)(emphasis added). This act is a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power permitting the rendition of advisory opinions. *State v. Morales,* 869 S.W.2d 941, 947 (Tex. 1994); *Texas Ass'n of Business,* 852 S.W.2d at 444; *Boorhem–Fields, Inc. v. Burlington N. R.R. Co.,* 884 S.W.2d 530, 539 (Tex.App.— Texarkana 1994, no writ); *see also Housing Auth. of Harlingen v. Valdez,* 841 S.W.2d 860, 864 (Tex.App.—Corpus Christi 1992, writ denied). Declaratory relief is appropriate only to resolve justiciable controversies between parties; the Act gives the court no power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication. *Bonham State Bank v. Beadle,* 907 S.W.2d 465 (Tex. 1995); *Firemen's Ins. Co. of Newark, N.J. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968); *California Prod., Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780, 781–83

---

1. Subject matter jurisdiction is an issue that may be raised for the first time on appeal by either party or by the court. *See Texas Ass'n of Busi-*

*ness v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993).

(1960) (in granting the district courts jurisdiction to adjudicate controversies under the Declaratory Judgments Act, the legislature did not intend to authorize the exercise of that jurisdiction in violation of the constitutional jurisdictional requirement of justiciable controversy); *Housing Auth. of Harlingen*, 841 S.W.2d at 867 (not a sufficient case in controversy set forth in the petition which would give either the court below or this court the discretion to entertain a declaratory judgment); *Lubbock Professional Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.)(declaratory judgment is unavailable unless there is a justiciable controversy between the parties); *Public Util. Com'n of Texas v. J.M. Huber Corp.*, 650 S.W.2d 951, 954 (Tex.App.—Austin 1983, writ ref'd n.r.e.). The basic purpose of the remedy is to provide parties with an early adjudication of rights before they have suffered irreparable damage. *See Harkins v. Crews*, 907 S.W.2d 51, 56 (Tex.App.—San Antonio 1995, writ denied) (quoting *McCart v. Cain*, 416 S.W.2d 463, 466 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.)).

In this case, appellants allege that they have been injured by appellees' past conduct. However, there is currently no "controversy" between the parties. In fact, there are no charges pending against any of the three appellants. The remote possibility that a future injury may happen is not sufficient to satisfy the actual controversy requirement for declaratory judgments. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *see also Camarena v. Texas Employment Com'n*, 754 S.W.2d 149, 151 (Tex.1988) (district courts, under our Constitution, do not give advice or decide cases upon speculative, hypothetical or contingent situations). At this point, a declaration that appellees' past conduct violated appellants' constitutional rights would be nothing more than a "gratuitous comment without any force or effect." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985); *see also Harkins*, 907 S.W.2d at 56 (Texas courts have powers to render declaratory judgment when judgment would serve a useful purpose).

I would reach a similar holding regarding appellants' claims for injunctive relief. The injury underlying a claim for injunctive relief must be actual and substantial, or a real, affirmative prospect of an actual and substantial injury. *Brazoria County Appraisal Dist. v. Notlef, Inc.*, 721 S.W.2d 391, 393 (Tex.App.—Corpus Christi 1986, no writ); *Parkem Indus. Serv., Inc. v. Garton*, 619 S.W.2d 428, 430 (Tex.Civ.App.—Amarillo 1981, no writ). An injunction will not issue to prevent merely speculative harm. *See, e.g., Lyons*, 461 U.S. at 112, 103 S.Ct. at 1670; *Camarena*, 754 S.W.2d at 151. Again, the remote possibility that appellants may at some time in the future be charged with a Class C Misdemeanor and be subject to appellees' alleged unconstitutional conduct is not sufficient to justify injunctive relief. *See Morales*, 869 S.W.2d at 947 (an injunction will not issue unless it is shown that the respondent will engage in the activity enjoined); *see also Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex.1983) (holding that the fear or apprehension of the possibility of injury is not a basis for injunctive relief); *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961) (explaining that injunction should not issue on mere surmise of injury); *Transport Co. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953) (requiring showing of a "probable injury" if respondent not restrained).

Accordingly, because there is currently no justiciable controversy between the parties involved, neither this Court nor the trial court has jurisdiction to render the relief sought. Therefore, I would affirm the summary judgment as granted by the trial court.