Ruth Maree LARA, Dr. Ronald B. Flowers, Michael Lee Huff, Jack Head, Jr., Robert Neel, Bryan Peterson, Appellants,

v.

David WILLIAMS, in his capacity as Sheriff of Tarrant County, Texas, and Tarrant County, Texas, Appellees.

No. 2–97–069–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 14, 1999.

Rehearing Overruled Feb. 18, 1999.

Laurance R. Priddy, Fort Worth, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dawn Ryan Budner, Richard A. Rhohn, Dallas, The Rutherford Institute, George B. Flint, Plano, for Appellants.

Russell A. Friemel, Katherine Laroe, Tarrant County Dist. Atty., Fort Worth, for Appellee.

Before LIVINGSTON, RICHARDS, and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

### 1. Introduction

This case presents difficult constitutional questions concerning the subject of religion and the administration of a county jail facility.

The trial court granted summary judgment in favor of Tarrant County and Tarrant County Sheriff David Williams (collectively "Sheriff Williams") against the plaintiff appellants on their claims for damages, injunctive relief, declaratory relief, and attorneys' fees, in connection with the creation and operation of a religious education program known as the Chaplain's Educational Unit ("CEU" or "the unit"), which is conducted in the Tarrant County Corrections Center ("the jail" or "TCCC"), a county jail facility. In fourteen points brought by Michael Lee Huff, a former inmate of the jail, and Dr. Ronald B. Flowers, a Tarrant County resident, and seven points brought by Ruth Maree Lara, another former inmate, appellants [1] contend that the trial court erred in denying

---

1. Michael Lee Huff, Dr. Ronald B. Flowers, and Ruth Maree Lara will collectively be referred to as "appellants" and will individually be referred to by their last names.

their motions for partial summary judgment and in granting Tarrant County's motion for summary judgment because the operation of the CEU violates the Establishment Clause of the United States and Texas Constitutions, the Equal Protection Clause of the United States and Texas Constitutions, and 42 U.S.C. § 1983. Huff and Flowers also raise Free Exercise challenges. Appellants also argue that Tarrant County is not immune from their claims that the unit violates the Texas Constitution, that these claims are actionable, and that they have at all relevant times had standing to assert their claims. Because we find unresolved questions of material fact on the issue of whether the operation of the CEU violates the Establishment Clause of the First Amendment to the United States Constitution, we reject both parties' contentions that summary judgment was appropriate on that issue in their favor and will reverse and remand the case for trial.[2]

We agree with Sheriff Williams that the CEU does not violate the Free Exercise Clause of the First Amendment and will affirm the trial court's decision in that regard.

In addition to the above parties and issues, three inmates who are voluntarily housed in the CEU and want its existence continued, appellants Jack Head Jr., Robert Neel and Bryan Peterson, complain of the trial court's order striking their attempted intervention in the lawsuit. Finding no abuse of discretion, we will affirm the trial court's order striking the intervention.

## 2. Why the CEU was Created and Maintained

This case involves a challenge to Sheriff Williams' creation, implementation, and administration of the CEU, a segregated unit in the jail in which inmates are taught fundamentalist Christian principles. The exact purpose and manner of operation of the unit is in dispute. There is evidence the program was established in order to reduce the potential for violence among inmates due to a chronic problem with overcrowding in the jail, by keeping inmates occupied in a program designed to reduce boredom and inactivity, and at the same time, promote rehabilitation. On appeal, Sheriff Williams characterizes the operation of the unit as secular and contends no attempt is made within the unit to proselytize or disparage other religions. While these contentions *do* find support in the record, other evidence suggests that the unit operates to advance the personal religious beliefs of the administrators of the unit to the exclusion of other religions. We will detail the evidence on both sides of this issue later in this opinion.

## 3. History and Structure

The CEU was created in 1992. It was initially open to only male inmates; however, the following year a women's CEU was added. The CEU is located in a jail "pod"—a cluster of jail cells[3]—within the TCCC, a county jail facility where inmates serve sentences or await trial or transfer to the Texas Department of Criminal Justice. Inmates volunteer for admission to the CEU, where community volunteers teach what Sheriff Williams terms "orthodox" Biblical Christian principles in a group environment. The term "orthodox" is defined by Sheriff Williams and his chaplain as the belief that the Bible is infallible—free of human errors—and that one must be "born again" in order to gain salvation. Sheriff Williams permits no other religious views to be taught in the CEU and requires that "orthodox" Christianity be taught to the volunteer inmates at least four hours a day. The inmates stay in the CEU for a period of 120 days and are then reassigned back into the general population.

The program is administered by employees of the Sheriff's Department. The chain of authority over the CEU is as follows. Sheriff Williams, the highest county official presiding over the operations of the jail, has ultimate authority and responsibility for the CEU, including its curriculum. Chaplain

---

2. The appellate briefs filed by all parties in this case are excellent and have greatly benefitted the court.

3. Each floor of the jail is composed of four quadrants, or pods. Each pod is a 48-bed unit in which dormitory-style jail cells surround a large common room called a day room.

Hugh Atwell, Director of Chaplaincy at the jail, is a paid employee of Tarrant County and has been delegated responsibility for the daily operations of the CEU and is second in the chain of authority. Directly under Atwell is Chaplain Don Anderson, who holds the title of CEU Director. Anderson is not a paid employee of the jail but is required to work a minimum of thirty hours a week to retain his position. Anderson raises funds from various churches to sustain his religious activities. Chaplain Atwell and Sheriff Williams must personally agree with the content of the curriculum materials taught by volunteers from area churches or the materials will not be approved.

Appellants brought suit against Sheriff Williams seeking injunctive and declaratory relief for alleged constitutional violations and seeking damages and attorneys' fees for alleged violations of their civil rights. They argued that operation of the CEU violated 42 U.S.C. § 1983 as well as the Establishment, Free Exercise, and Equal Protection Clauses of the Texas and United States Constitutions.

Appellants filed a motion for partial summary judgment in the trial court, and Sheriff Williams filed a reply and counter motion for summary judgment. The trial court initially denied all motions for summary judgment on public policy grounds. Later, however, a second presiding judge indicated to the parties her desire to reconsider the various summary judgment motions. Lara filed a renewed motion for partial summary judgment. All parties filed a Rule 11 agreement providing, in part, that the refiling of the prior motions for summary judgment would not be required and that the court could consider the earlier filed motions. Huff and Flowers relied on their earlier motion and did not file a new one. Tarrant County again moved for summary judgment. An interested organization, The Rutherford Institute, filed a petition in intervention in this case on behalf of Jack Head, Jr., Robert Neel, and Bryan Petersen ("the intervenors"), inmates in the TCCC and participants in the CEU program, asserting that the granting of appellants' motion for partial summary judgment would infringe upon the free exercise of the interve-nors' religious beliefs. Lara filed a motion to strike the intervention.

Upon finding that there were no questions of material fact to be determined, the trial court denied appellants' motions for partial summary judgment, granted Sheriff Williams' motion for summary judgment, and granted Lara's motion to strike the intervention filed by the intervenors. Appellants and intervenors now bring this appeal.

## 4. The Question of Standing

### A. Standing as County Taxpayers

■ Sheriff Williams contends that appellants do not have the requisite standing to challenge his operation of the CEU. In Lara's sixth point and Huff and Flowers's thirteenth point, appellants challenge that position. They assert that because they pay taxes to Tarrant County, they are entitled to seek injunctive and declaratory relief against Sheriff Williams in his operation of a county jail facility.

Sheriff Williams moved for summary judgment, in part, on the grounds that appellants have no standing to assert their claims because no public tax money is involved in the operation of the CEU since the program does not cost anything over and above what it already costs to house, clothe, and feed the inmates. Huff and Flowers argue that public tax money for such expenditures is sufficient to entitle a Tarrant County taxpayer to seek injunctive and declaratory relief. We are persuaded by Sheriff Williams that appellants' standing does not derive from their status as taxpaying citizens.

■ Unless standing is conferred by statute, the common-law rule in Texas is that a person seeking to enjoin the actions of a governmental body must plead and prove that he has suffered "special injury," i.e., he must allege and show how he has been damaged and injured other than as a member of the general public. *See Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (Tex.1966); *Persons v. City of Fort Worth*, 790 S.W.2d 865, 868 (Tex.App.—Fort Worth 1990, no writ). Both Lara and Flowers rely on their taxpayer status in seeking to enjoin Tarrant

County from its continued operation of the CEU.

We have searched the record to determine whether Flowers has pleaded and proved that any harm or damages suffered as a result of Sheriff Williams' operation of the CEU are special or peculiar to him, separate and apart from those suffered by the general public, so as to afford him standing in this case. Flowers' pleadings do not allege that he suffered any special injury or has been damaged or injured other than as a member of the general public. He relies on two Texas Supreme Court cases for the proposition that taxpayers have frequently been held to have the necessary type of special interest when the evidence shows that a governmental entity is misusing tax dollars. *See Osborne v. Keith,* 142 Tex. 262, 177 S.W.2d 198 (1944); *Hoffman v. Davis,* 128 Tex. 503, 100 S.W.2d 94 (1937). Both cases stand for the proposition that a taxpaying citizen has standing to enjoin public officials from the illegal expenditure of public funds. *See Osborne,* 177 S.W.2d at 200; *Hoffman,* 100 S.W.2d at 95.

However, in the present case, appellants have not proven that any illegal expenditure of public funds exists regarding Sheriff Williams' operation of the CEU. The summary judgment evidence shows that no public tax money is involved in the religious teachings that occur within the CEU. The only public expenditure is provision of the same basic necessities to the inmates within the CEU that are afforded any other inmate in any unit in the jail. Therefore, we hold that Flowers does not have standing to maintain this action with respect to the alleged violations of the United States and Texas Constitutions and 42 U.S.C. § 1983 because such standing is not specifically granted by statute and because Flowers has not shown that he has been damaged or injured as a result of Sheriff Williams' actions other than as a member of the general public. Thus, all fourteen of Flowers' points are overruled. This holding also applies to Lara to the extent that she relies on her status as a Tarrant County taxpayer in asserting standing to make the claims she now brings.

**B. Standing as Inmates**

■ Lara and Huff also assert standing based on their status as former inmates of the TCCC. Sheriff Williams alleges that because Lara and Huff are no longer inmates of the jail, no order of this court could affect the conditions of their confinement; hence, this controversy is moot and neither injunctive nor declaratory relief may be granted. He relies on *Beck* for the proposition that only an inmate in confinement has standing to seek injunctive relief under section 1983 with respect to the conditions of his confinement. *See Beck v. Lynaugh,* 842 F.2d 759, 762 (5th Cir.1988).

■ Under classic mootness doctrine, a justiciable controversy is definite and concrete and must impact the legal relations of parties having adverse legal interests. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Reyna v. City of Weslaco,* 944 S.W.2d 657, 662 (Tex.App.—Corpus Christi 1997, no writ). Therefore, a controversy between the parties must exist at every stage of the legal proceedings, including the appeal. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36, (1950). Cases may become moot when allegedly wrongful behavior has passed and could not be expected to recur. *See Securities & Exch. Comm'n v. Medical Comm. for Human Rights,* 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560; *Reyna,* 944 S.W.2d at 662. One exception to the general mootness doctrine, however, is a controversy "capable of repetition, yet evading review," by which a reasonable expectation or demonstrable probability exists that the same controversy will recur involving the same complaining party. *See Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam).

In the present case, both Lara and Huff have been convicted of their crimes and released from the TCCC into the custody of the Institutional Division of the Texas Department of Criminal Justice to serve their sentences. However, the duration of any inmate's stay in the TCCC before transfer or release may be of such short duration that no inmate would ever be there long enough to

see a lawsuit through to its conclusion. There is also the possibility that Huff and Lara may again find themselves inmates of the TCCC at some point in the future, either because of recidivism following their release, or as a result of a transfer back to the jail because of the potential need of their presence at post-conviction writ hearings. Moreover, if we were to accept Sheriff Williams' standing argument, any sheriff of this state would be free to violate the Establishment and Free Exercise Clauses at will and indefinitely avoid having the merits of any claims asserted against him or her resolved by simply transferring the complaining inmate out of the jail. We therefore conclude that Lara and Huff's actions fall under the "capable of repetition" exception to the mootness doctrine, thereby providing them standing to seek declaratory and injunctive relief. Lara's point six and Huff's point thirteen are sustained.

### 5. Striking the Intervention

We now turn to the question of whether the trial court abused its discretion in striking the intervention of appellants Head, Neel and Peterson ["Intervenors"].[4] In *Guaranty Federal Savings Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990), the Texas Supreme Court provided reviewing courts guidance in resolving questions involving orders striking intervention. Such orders are to be overturned only if: (1) the intervenor could have brought the action in his own name, or, if the action had been brought against him, he would be able to defeat recovery; (2) intervention will not complicate the case by excessive multiplication of issues; and (3) intervention is "almost essential" to effectively protect the intervenor's interest. *See id.* Under the particular facts of this case, we find no abuse of discretion. Intervenors did not file their petition in intervention until three years into

the legal proceedings in this case and their claims would add additional issues in the suit which could prolong the discovery process. In addition, intervenors could not have brought suit in their own names since there would have been no cause of action against Sheriff Williams, absent a decision by him to end or significantly alter the CEU program. Finally, intervention is not "almost essential" to effectively protect their interests since Sheriff Williams' position defending the creation and operation of the CEU is very similar to their goal of maintaining the CEU in its present form. No abuse of discretion having been shown, Intervenors' points one through five are overruled.

### 6. The Constitutional Questions Presented

Our Federal Constitution contains two clauses within its First Amendment which concern the subject of religion. The Amendment requires that "Congress [5] shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof ..." The first clause is often referred to as the "Establishment Clause"; the second the "Free Exercise Clause." The instant case involves claimed violations of both clauses: (1) that Sheriff Williams has unlawfully established orthodox Christianity through the administration of the CEU, and alternatively, (2) that he has violated the free exercise of members of the Jehovah's Witnesses religion (a non-orthodox Christian faith) by failing to permit their teachings within the CEU or a similar setting.

Article 1, section 6 of our State Constitution provides protections similar to the Federal Constitution:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to

---

4. Five points are presented: the trial court erred because (1) the intervenors had standing to assert a constitutional claim; (2) inmates such as intervenors would be affected by declaratory judgment; (3) intervenors had a justiciable interest; (4) intervention would not delay or complicate the case; and (5) no sufficient cause existed to justify the order striking intervention.

5. Both clauses are applicable to the states by virtue of the due process clause of the Fourteenth Amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (Free Exercise Clause); *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (Establishment Clause).

maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

TEX. CONST. art. 1, § 6.

In addition, article 1, section 7 of the Texas Constitution provides that, "[n]o money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purposes." TEX. CONST. art. I, § 7. The interpretive commentary to section 7 states that it is "broader in scope than proscribing aid to sectarian schools, for it, combined with Section 6, precludes the state from establishing a religion, from aiding one religion, from aiding all religions, or from preferring one religion over another. A wall of separation between church and state is created." TEX. CONST. art. I § 7 interp. commentary (Vernon 1997).

### A. Standard of Review

Our next inquiry is whether this case was properly disposed of by summary judgment. Summary judgments are reviewed under the familiar standard: (1) the movant for summary judgment has the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d

546, 548–49 (Tex.1985). To sustain a summary judgment dismissing a claim, the record must either negate an essential element of the plaintiff's cause of action or establish an affirmative defense. *See Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st. Dist.] 1994, writ denied). In other words, the summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, as in this case, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

### B. Application of the Standard

Sheriff Williams moved for summary judgment in the district court on several grounds, including claims that, as a matter of law, the operation of the CEU was not unconstitutional.[6] Implicit in his motion was the claim that the summary judgment evidence established that under any applicable standard of review, operation of the CEU did not amount to an establishment of religion. He also contended that the summary judgment evidence proved that Tarrant County was not constitutionally required to create a similar unit to accommodate Huff in the practice of his religious beliefs. Finally, he alleged that the summary judgment evidence proved, as a matter of law, that he did not violate the appellants' equal protection rights.

### C. The Establishment Issue

█ · Appellants argue that operation of the CEU constitutes an unlawful establishment of religion. *See* U.S. CONST. amend. 1 (prohibiting laws respecting an establishment

---

**6.** The specific grounds presented in the motion were as follows: (1) appellant's have no standing to seek the relief requested; (2) the CEU had clear secular purposes with no excessive government entanglement, i.e., no Establishment or Free Exercise Clause violations, as a matter of law; (3) Sheriff Williams is immune from suit for state constitutional violations; and (4) the CEU is necessary to accommodate the "free exercise" rights of inmates in the jail. The trial court's order granting summary judgment was general and did not specify the grounds on which the order was based.

of religion). The primary standard throughout the 1970s and 80s for determining whether a particular practice or policy satisfied the Establishment Clause was the three-part *Lemon* test. Under *Lemon v. Kurtzman,* the policy or practice is constitutional if: (1) the practice has a secular purpose; (2) the primary effect of the practice neither advances nor inhibits religion; and (3) the practice avoids excessive government entanglement with religion. 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

Although *Lemon* has never been overruled, in various Establishment Clause contexts, the Supreme Court has abandoned the *Lemon* test in favor of other standards giving consideration to whether the governmental practice at issue coerces anyone to support or participate in religion or its exercise,[7] whether the governmental practice constitutes an endorsement of religion or a particular religious belief,[8] and whether the practice is deeply embedded in the history and tradition of the United States.[9] And while the Court has never determined the standard or test for prisoners' Establishment Clause claims, it has set out the general standard of review for challenges to prison regulations or practices. When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The Supreme Court stated that such a standard is necessary if prison administrators, rather than courts, are to make the inherently difficult judgments concerning institutional operations:

> Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractible problems of prison administration. The rule would also distort the decision-making process, for every administrative

judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. *Id.* at 89, 107 S.Ct. at 2262.

Several factors are relevant in determining the reasonableness of the regulation at issue. Among the factors: there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify it and the governmental objective must be a legitimate and neutral one. *See Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984). In addition, the reviewing court must inquire whether the policy restricting an inmate's First Amendment rights operates in a neutral fashion, without regard to the content of the expression. *See Pell v. Procunier,* 417 U.S. 817, 828, 94 S.Ct. 2800, 2807, 41 L.Ed.2d 495 (1974). The Court has since stated that "the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights." *Washington v. Harper,* 494 U.S. 210, 224, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990). The Court has applied the reasonableness standard set forth in *Turner* to free exercise, free speech, free assembly, access to courts, privacy, and equal protection claims. *See, e.g.,Washington v. Harper,* 494 U.S. at 224, 110 S.Ct. at 1038 (applying *Turner* to prisoners' due process claims); *Thornburgh v. Abbott,* 490 U.S. 401, 407–08, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989) (holding that *Turner* applies to prisoners' free speech claims); *Griffin v. Wisconsin,* 483 U.S. 868, 880, 107 S.Ct. 3164, 3172, 97 L.Ed.2d 709 (1987) (applying *Turner* to probationer's Fourth Amendment claim); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987) (holding that *Turner* is the standard for prisoners' free exercise claims); *Block,* 468 U.S. at 589, 104 S.Ct. at 3234 (holding that ban on contact visits was reasonably

---

**7.** *See Lee v. Weisman,* 505 U.S. 577, 587, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992).

**8.** *See County of Allegheny v. ACLU Greater Pittsburgh Chapter,* 492 U.S. 573, 597, 109 S.Ct. 3086, 3103, 106 L.Ed.2d 472 (1989).

**9.** *See Marsh v. Chambers,* 463 U.S. 783, 792, 103 S.Ct. 3330, 3336, 77 L.Ed.2d 1019, (1983).

related to security concerns); *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 129–30, 97 S.Ct. 2532, 2540, 53 L.Ed.2d 629 (1977) (applying the deferential standard articulated in *Turner* to freedom of assembly and speech).

Having reviewed the instant record with the above factors in mind, we conclude neither party is entitled to summary judgment on the Establishment Clause question, although both insist that they are entitled to summary judgment because their positions are established as a matter of law. The law requires us, in each instance, to view the summary judgment evidence in the light most favorable to the non-movant, and because there is sharply conflicting evidence on both sides of the question, we hold that a trial is necessary to determine the issue. Among the many areas of conflicting testimony, there is evidence supporting the view that the CEU was created to improve order and discipline within the jail, a valid secular purpose. Chaplain Atwell testified by deposition that it is *not* a goal of the program for inmates to accept Christianity; [10] however, Chaplain Anderson, the person responsible for the day-to-day operation of the unit, admitted that one of the aims of the CEU is to lead the inmates into the "path" of salvation through the "born again" experience, and that was what orthodox Christianity was "all about."

There is evidence Sheriff Williams has a policy against instructors proselytizing in the CEU, but there is contrary evidence that proselytizing is widespread and, in large part, openly and routinely engaged in by CEU instructors. Former CEU Chaplain Chris Athey, an administrator for the program from its inception in May of 1992 through August of 1993, admitted that an attempt was made through the CEU to "proselytize [the inmates] and make them believe [and] conform them to orthodox point of view." In fact, Athey said he would question the motives of any inmate of another faith to volunteer for the CEU program because they knew up front that they would be subjected to proselytizing and conversion. In addition, the curricula itself provides evidence that the CEU instructors are attempting to convert inmates to Orthodox Christianity. For example, one of the courses is described as follows: "A study of specific problems new converts incounter [sic] in growth and the importance of after care both in and out of jail," and there is evidence the teacher of that course, Kevin Finch, an instructor from Texas Bible College, refers to liberal Baptists as "stinking liberals" and that another instructor has made anti-Semitic comments and advised the inmates that non-denominational people stood "for nothing."

There is evidence that the curricula materials are non-doctrinal; however, there is also evidence the curriculum materials are often *very* doctrinal, including disparaging references to other religions. For example, one publication titled "Back to the Basics Ministries" was discontinued from the curriculum because, in the words of Chaplain Atwell, ". . . it slam-dunked the Catholics in a couple of places." In another publication, discontinued after its contents were made public, followers of Christian Science, The Church of Latter Day Saints, and Jehovah's Witnesses were denounced as "cult" followers. The publication also warned that "Satan

---

**10.** A trier of fact could reasonably conclude Chaplain Atwell's testimony at odds with his own statements concerning the "goal" of evangelism:

Q. [I]n response to my question of whether or not one tenant [sic] of Christianity is evangelism, *would your response be yes?*
A. Sure.
Q. And are the inmates in the CEU taught that tenant [sic] of Christianity?
A. *I feel confident they're exposed to that at* some time or another in their stay here.
Q. For instance, isn't [course reading material entitled] "Fishers of Men" teaching the prisoners *to evangelize?*

A. I would have to recollect, go back and look at that, but it's such a broad program that I'm sure that's going to be one of the units in there I would suspect.
Q. Would you say that is one of the goals of the CEU?
A. To evangelize?
Q. To teach the prisoners the principles of evangelism?
A. Sure, among a lot of other things.
Q. And let me ask the question that you just said. Is it one goal of the CEU to evangelize?
A. Rather than—it's probably going to be a by-product. As far as being a written goal, it's almost a given.

will only be defeated if you confront him verbally. He is under no obligation to obey your thoughts."

There is evidence Sheriff Williams might agree to accommodate other religious programs, should the number of inmates of a particular persuasion rise in number; however, other evidence indicates the threshold number is unobtainable. Chaplain Atwell, director of the CEU, stated he would consider adding units for other religions if there was a large demand: "[I]f there was *a couple thousand Hindus* that were wanting to set up a particular type of rehabilitative unit, I think we would need to try to accommodate them."

There is evidence that participation in the CEU is strictly voluntary; however, other evidence suggests entry into the unit, which is located in a relatively new building in Tarrant County, is sometimes requested by the inmates to provide a safe haven from the violent atmosphere of the "Belknap Street" jail, an older jail facility whose dated design permits guards less control over inmates, leading to relatively higher rates of assaults. There are times when an inmate can acquire a vacancy in the CEU when there are no vacancies in the non-CEU general population of the newer jail.

There is evidence the primary effect of the program is that order and security in the jail is improved and the inmates who have participated in the program appear to create a calming influence in the jail when returned to the general population. Evidence from one former inmate in the unit, however, equated the program to "spiritual rape" and the "virtual brainwashing" of a small inmate population, the majority of which are functionally illiterate.

By this, and other summary judgment evidence, we conclude Sheriff Williams has produced sufficient evidence to defeat appellants' summary judgment motion on the Establishment Clause question and, conversely, that appellants have produced sufficient evidence to defeat Sheriff Williams' summary judgment motion on this same issue. Our

holding will require these, and the many other factual conflicts, to be determined by the trial court. We overrule all of appellants' points to the extent they allege that summary judgment in their favor was required; and we sustain Lara's points one, four, five, six and seven, and Huff's points four, five, eight, nine, twelve, thirteen and fourteen, to the extent that they concern their Establishment Clause claims and the summary judgment ruling in favor of Sheriff Williams.[11]

### D. The Free Exercise Issue

■■■ Appellant Huff, a member of the Jehovah's Witnesses religion, alleges that Sheriff Williams violated the Free Exercise Clause by his refusal to provide an opportunity for Huff to participate in group discussion and instruction in his faith. Huff contends that, in comparison to participation in the CEU, the "limited opportunities for religious expression" in which he may visit with a minister of his faith in the regular security booth of the jail "denies the free exercise of religion to all jail prisoners except those who happen to be Christians who believe in the Holy Trinity." We agree with Sheriff Williams that the accommodations presently made to Huff for the practice of his religion are, as a matter of law, sufficient.

■■■ While there is an unqualified prohibition against government interference with beliefs, governmental regulation may lawfully impose an incidental burden on otherwise protected religious conduct. *See Wisconsin v. Yoder*, 406 U.S. 205, 220, 92 S.Ct. 1526, 1535, 32 L.Ed.2d 15 (1972). One situation where this incidental burden necessarily occurs is within the context of a prison or jail. The Supreme Court has determined that prisoners' free exercise claims are reviewed according to the standard set out in *Turner* of being reasonably related to penological interests. *See O'Lone*, 482 U.S. at 349, 107 S.Ct. at 2404. The factors relevant to our determination in the present case are (1) whether the denial of group worship and instruction in the Jehovah's Witnesses faith

---

11. Several of appellants' points contain both claims that the trial court erred in granting Sheriff Williams' summary judgment relief as well as claims that appellants were entitled to summary judgment. See the appendix for a listing of all points presented.

has a logical connection to Tarrant County's legitimate penological interests; (2) whether Huff and other inmates retain the ability to participate in other forms of religious exercise; and (3) the impact that Huff's asserted right to group worship and instruction would have on other inmates, on prison personnel, and on allocation of prison resources. *See id.* at 350–52, 107 S.Ct. at 2405–06; *see also Block,* 468 U.S. at 584–85, 104 S.Ct. at 3231–32 (emphasizing proper deference standard requires prison officials rather than courts to make the complex judgments concerning prisoners' rights).

Tarrant County presented uncontroverted summary judgment evidence showing that Huff is allowed to meet with ministers of his faith in the TCCC, and upon request, the meetings would be permitted to take place face-to-face rather than within the jail security booth. In addition, Huff has access to many books received from Jehovah's Witnesses in the lending library maintained in the chaplain's office and has the option to enroll in a correspondence course in his faith.

This evidence conclusively establishes that Tarrant County's denial of group worship to Jehovah's Witnesses in a CEU-type unit does not have the necessary volunteer or inmate support, and accommodating Huff's wish would require Tarrant County to fund the program, which is not permissible. Tarrant County further established, as a matter of law, that its interest in efficient use of its facilities and personnel, as well as its desire to minimize group inmate situations that might compromise internal security, justify disallowing Huff the opportunity to lead his own group study and justify not providing space for sporadic group instruction.

The Fifth Circuit Court of Appeals has held that demands on a prison's financial resources and the disruption of personnel schedules to transport inmates for religious activity made denial of proposed accommodations of religious practices reasonable. *See*

*Mumin v. Phelps,* 857 F.2d 1055, 1057 (5th Cir.1988). It has also ruled that the expense and division of prison resources that would be necessary to accommodate a particular inmate's "religious diet" were valid penological interests. *See Kahey v. Jones,* 836 F.2d 948, 951 (5th Cir.1988). Other courts have reached similar decisions addressing the free exercise issue. *See Jenkins v. Angelone,* 948 F.Supp. 543, 548 (E.D.Va.1996) (holding that limiting prisoners' rights to practice religion to one hour per week and refusing to provide vegan diet was justified by the need to maintain security, manage budgetary constraints, and deflect administrative difficulties).

We hold that the summary judgment evidence conclusively establishes that Sheriff Williams' denial of Huff's asserted right to group religious instruction and worship was reasonable and that the trial court correctly granted summary judgment for Sheriff Williams on Huff's Free Exercise claims.[12] Huff's second and third points are overruled.

### E. Equal Protection

In Lara's second point and in Huff's sixth, seventh, tenth, and eleventh points, appellants argue that the trial court erred in granting Tarrant County's motion for summary judgment[13] because operation of the CEU violates their right to Equal Protection under both the United States and Texas Constitutions. An equal protection claim arises when, without adequate justification, a governmental entity treats similarly situated people differently. Appellants contend Sheriff Williams is in violation of the Equal Protection Clause[14] by discriminating among inmates on the basis of religion through the exclusion of non-Christians from the CEU and providing benefits to Christian inmates in that unit. However, because no community volunteers of appellants' faiths have offered to fund and teach a religious education unit, and because there is no evidence that such units would interest the

12. The trial court also correctly denied Huff's motion for partial summary judgment on this issue.

13. Appellants also argue the trial court erred in denying their motion for partial summary judgment on this issue.

14. "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV.

number of inmates necessary for efficient use of the facility, the two groups are not similarly situated. *See Hyde v. Texas Dep't of Criminal Justice,* 948 F.Supp. 625, 625–26 (S.D.Tex.1996) (stating that Muslim and Jehovah's Witnesses in the TDCJ are not similarly situated because group size and availability of volunteers differed) (dictum).

Moreover, the summary judgment evidence shows that the only inmates excluded by Tarrant County from the CEU are those who are ineligible from group housing and that the CEU is open to any inmate regardless of religion. Interested inmates must take the initiative and request to be transferred to the unit. Because admission to the CEU is open to all inmates, regardless of religious belief, and because admission is a choice made by the individual inmates, any classification is self-imposed by the inmates. *See Mueller v. Allen,* 463 U.S. 388, 398–99, 103 S.Ct. 3062, 3068–69, 77 L.Ed.2d 721 (1983) (holding that state programs that are wholly neutral in offering assistance to a class defined without reference to religion do not violate *Lemon* because any aid to religion results from private choices of individuals).

Lara argues that requiring CEU inmates to participate in four hours per day of religious instruction in Christianity is tantamount to excluding non-Christians from the unit. Appellants contend that because non-Christians are "excluded" from the CEU, non-Christian inmates are denied benefits and privileges enjoyed by CEU (and therefore Christian) inmates. Appellants allege that the CEU (and therefore Christian) inmates have access to a library of Christian books and videos, a VCR, a piano or organ, and the opportunity to live and study their common religion together. Sheriff Williams presented uncontroverted summary judgment evidence showing that:

No special privileges are accorded participants in the CEU program.

Extra television time and more beneficial visitation rules are not authorized.

Musical instruments in the unit are used as teaching aids under the instruction and supervision of the chaplain's staff.

The VCR in the unit is common classroom equipment also found in educational units, the GED classroom, substance abuse units, and the Mental Health and Mental Retardation unit.

Aside from establishing that any inmate eligible for group housing can enter the CEU, the evidence also shows that the chaplain's library is available to all inmates and contains donated books and literature in many religions, VCRs are standard equipment in educational units, and the piano or organ used in the unit were either unused in storage or donated before being placed in the CEU for teaching purposes. The ability to watch Christian videos and sing hymns accompanied by a musical instrument is balanced by the loss or restriction of privileges required of CEU inmates, and does not amount to a benefit or privilege of any constitutional magnitude. *See Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.,* 410 U.S. 719, 725, 93 S.Ct. 1224, 1228, 35 L.Ed.2d 659 (1973) (holding that equal protection does not make constitutional violation of every minor difference in law's application).

■■■■ The Supreme Court has stated that a prison need not employ chaplains representing every faith with at least one adherent among the prison population. *See Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). Appellant Lara, who is Jewish, asserts that the strict scrutiny standard applies to appellants' equal protection claims because fundamental rights are involved. However, prison regulations alleged to burden prisoners' rights—fundamental or not—are reviewed under the *Turner* standard and not strict scrutiny. *See Turner,* 482 U.S. at 89, 107 S.Ct. at 2262 (expressly rejecting the strict scrutiny standard). *Compare Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978) (legal requirements burdening state citizens' rights to marry subject to strict scrutiny under Equal Protection Clause) *with Turner,* 482 U.S. at 97, 107 S.Ct. at 2266 (prison regulations burdening inmates' rights to marry are subject to "reasonably related to penological interests" review under Equal Protection Clause). A higher standard of review would "distort the decision making process, for every adminis-

trative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem," which would unnecessarily perpetuate courts' involvement in prison administration. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262.

In applying the *Turner* standard, we hold that the summary judgment evidence conclusively establishes that Sheriff Williams did not discriminate against appellants in violation of the Equal Protection Clause. Appellants do not allege that Sections 3 and 3a of the Texas Constitution provide more or greater protection than the U.S. Constitution. *See Hogan v. Hallman,* 889 S.W.2d 332, 338 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that Texas follows federal standards when determining whether statute violates equal protection under either state or federal provisions). We, therefore, hold that the trial court was correct in granting summary judgment for Tarrant County on appellants' equal protection claims under both the United States and Texas Constitutions. We overrule Lara's second point and Huff's sixth, seventh, tenth, and eleventh points.

### F. Section 1983 Claims

■ In Lara's third point and in Huff's first point, appellants assert that the trial court erred in granting summary judgment for Tarrant County because they have proved that Sheriff Williams violated rights secured by the United States Constitution in violation of 42 U.S.C. § 1983. Lara bases her claim on Sheriff Williams' alleged violation of the Establishment Clause, while Huff bases his claim on its alleged violation of the Free Exercise Clause. A municipality may be liable under section 1983 if its policy or custom caused a constitutional injury. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); *Reyna,* 944 S.W.2d at 660.

Because we have held above that the trial court correctly granted Sheriff Williams' motion for summary judgment as to the Free Exercise Clause complaint, we hold that Huff has failed to establish a claim under 42 U.S.C. § 1983, and overrule his first point on that ground.

■ Lara discusses only one specific incident in her brief to support her claim for emotional distress damages under section 1983. This involves a one-time allegation that a guard attempted to convert her to Christianity and called her a "devil-worshiper." Allegations of a single episode of harsh words do not state a claim under section 1983, and a claim of injury for emotional distress does not rise to the level of a constitutional issue which can be redressed under section 1983. *See Hinojosa v. City of Terrell, Tex.,* 864 F.2d 401, 402 (5th Cir.1989) (holding that temporary emotional distress cannot be redressed); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983) (holding that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). Accordingly, we overrule Lara's third point.

### G. Other Issues

In her fourth point, Lara asserts that the trial court erred in granting summary judgment for Sheriff Williams because her claims under the Texas Constitution are actionable. Lara and Sheriff Williams agree that no damages are available for these claims, but Lara asserts that declaratory and injunctive relief are available. Sheriff Williams now concedes that violations of the Texas Constitution are subject to redress through injunctive and declaratory relief. Because we find that the Establishment Clause question requires remand, the trial court must decide, based on its ultimate resolution of the facts, whether injunctive and declaratory relief should be granted. Lara's fourth point is sustained.

In Lara's fifth and seventh points and in Huff's twelfth and fourteenth points, appellants argue that Sheriff Williams has no immunity from claims that the CEU violates the Texas Constitution, and argue that they have, at all times, diligently pursued their claims for injunctive relief. Although these

issues were raised in the trial court, Sheriff Williams, showing high ethical standards, has abandoned his claim of sovereign immunity as an affirmative defense to appellants' claims for violations of the Texas Constitution and does not now disagree with appellants' contentions that the record shows they have diligently pursued their claims. Therefore, we sustain Lara's fifth and seventh points and Huff's twelfth and fourteenth points.

## Conclusion

For the above reasons, we affirm in part, and reverse and remand the case to the district court, in part, for proceedings consistent with this opinion. In summary, we:

1. Affirm the trial court's order striking intervention;

2. Affirm the trial court's granting of summary judgment in favor of Sheriff Williams on all claimed CEU violations of the free exercise guarantees of our State and Federal Constitutions, and on all claimed violations of 42 U.S.C. § 1983 and constitutional rights to equal protection;

3. Affirm the trial court's denial of all summary judgment motions made by appellants; and

4. Reverse and remand for trial the disputed questions of fact concerning whether the CEU violates the Establishment Clauses of our State and Federal Constitutions.

## APPENDIX

### Appellant Lara's Points

Point One:

The trial court erred in failing to grant summary judgment for plaintiff Lara and in granting summary judgment for defendants because the CEU is an unconstitutional establishment of religion in violation of the United States and Texas Constitutions.

Point Two:

The trial court erred in failing to grant summary judgment for plaintiff Lara and in granting summary judgment for defendants because the CEU violates the Equal

Protection Clauses of the United States and Texas Constitutions

Point Three:

The trial court erred in granting summary judgment for defendants because plaintiff proved her claim under 42 U.S.C. § 1983.

Point Four:

The trial court erred in granting summary judgment for defendants because plaintiff's claims that the CEU violates the Texas Constitution are actionable.

Point Five:

The trial court erred in granting summary judgment for defendants because defendants are not immune from plaintiff's claims that the CEU violates the Texas Constitution.

Point Six:

The trial court erred in granting summary judgment for defendants because plaintiff has at all relevant times had standing to assert her claims.

Point Seven:

The trial court erred in granting summary judgment for defendants because plaintiff did not fail to diligently pursue her claims for injunctive relief.

### Appellants Huff and Flowers' Points

Point One:

The trial court erred in granting summary judgment for the defendants because the summary judgment proof clearly demonstrates that the defendants denied Michael Lee Huff's Free Exercise of his religion, thereby depriving him of a right secured by the Constitution of the United States in violation of 42 U.S.C.A. § 1983.

Point Two:

The trial court erred in overruling plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment because the summary judgment proof establishes as a matter of law that the Tarrant County Jail operates in such a manner as to deny inmates their right to free exercise of religion in viola-

tion of the First Amendment to the United States Constitution

Point Three:

Alternatively, the trial court erred in granting defendants' motion for summary judgment because the evidence raises fact issues as to whether the Tarrant County Jail operates in such a manner as to deny inmates free exercise of religion in violation of the First Amendment to the United States Constitution.

Point Four:

The trial court erred in overruling plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment because the summary judgment proof establishes as a matter of law that operation of the CEU amounts to the unconstitutional establishment of religion in violation of the First Amendment to the United States Constitution.

Point Five:

Alternatively, the trial court erred in granting defendants' motion for summary judgment because the evidence raises fact issues as to whether the operation of the CEU amounts to the unconstitutional establishment of religion in violation of the First Amendment to the United States Constitution.

Point Six:

The trial court erred in overruling plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment because the summary judgment proof establishes as a matter of law that the Tarrant County jail operates in such a manner as to deny inmates the equal protection of the law under the Fourteenth Amendment to the United States Constitution.

Point Seven:

Alternatively, the trial court erred in granting defendants' motion for summary judgment because the evidence raises fact issues as to whether the Tarrant County Jail operates in such a manner as to deny inmates the equal protection of the law under the Fourteenth Amendment to the United States Constitution.

Point Eight:

The trial court erred in overruling plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment because the summary judgment proof establishes as a matter of law that the Tarrant County Jail and the CEU operate in such a manner as to establish religion as prohibited by Article 1, § 6 of the Texas Constitution.

Point Nine:

Alternatively, the trial court erred in granting defendants' motion for summary judgment because the evidence raises fact issues as to whether the Tarrant County Jail and the CEU establish religion in violation of Article 1, § 6 of the Texas Constitution.

Point Ten:

The trial court erred in overruling plaintiffs' motion for partial summary judgment and in granting defendants' motion for summary judgment because the summary judgment proof establishes as a matter of law that the Tarrant County Jail and the CEU operate in such a manner as to deny equal protection under law to those practicing unfavored religions, in violation of Article 1, §§ 3 and 3a of the Texas Constitution.

Point Eleven:

Alternatively, the trial court erred in granting defendants' motion for summary judgment because the evidence raises fact issues as to whether the Tarrant County Jail and the CEU deny Equal Protection of law to those practicing unfavored religions, in violation of Article 1, §§ 3 and 3a of the Texas Constitution.

Point Twelve:

The trial court erred in granting defendants' motion for summary judgment because defendants are not immune from plaintiffs' claims that the practices in the Tarrant County Jail and the CEU violate the Texas Constitution.

Point Thirteen:

The trial court erred in granting defendants' motion for summary judgment be-

cause the plaintiffs Huff and Flowers have at all times had standing to advance the claims they make herein.

Point Fourteen:

The trial court erred in granting summary judgment for the defendants because the plaintiffs have at all times diligently pursued their claims for injunctive relief herein.